STATE OF CONNECTICUT *v.* ANONYMOUS (1972–1)*

SUPERIOR COURT

MEYERS, J.   This motion to dismiss is addressed to the substitute information, which is in two counts, both of which charge felonies.   The defendant is accused of the sale of a controlled drug, the narcotic cocaine, in violation of General Statutes § 19-480 (a), and the crime of conspiracy to sell controlled drugs, in violation of § 54-197.   This matter has been submitted on briefs.

The defendant claims that the sale of the drug cocaine is punishable as a misdemeanor under other sections of our statutes, specifically, §§ 19-213 (1), 19-215 (a), 19-226 (d), 19-226 (k) (1) and 19-227 (2).

---

* Opinions on preliminary motions in criminal cases are thus entitled, in view of General Statutes § 54-90.

Because of this the defendant urges, in support of the instant motion, that a constitutional guarantee is denied him in this prosecution because the state's attorney has chosen to prefer felony charges and therefore there is here a failure to provide equal protection of the laws. In detail, the claims of the defendant include, in effect, that there are two sets of penalties provided for the identical offense; that in this way the legislature has improperly delegated to the state's attorneys its authority to establish limits of penalties; and that the selection of the felony charges as here made results in a violation of the defendant's constitutional right to equal protection of the laws.

Our history as a nation consistently reflects that our social and political philosophy rests principally on the fundamental substance of equality. This dedication begins with our Declaration of Independence, containing, as it does, the basic generalization as to the equality of all men, and so continues in the first section of the fourteenth amendment to the constitution of the United States and § 1 of article first, the Declaration of Rights, of the constitution of Connecticut. Both constitutional provisions contain specific guarantees of equality and safeguards against capriciousness, arbitrariness and such disparity of treatment as is contrary to basic rights and justice. In short, providing protection from the unequal operation of the laws entitling any person to the same privileges and burdens as are made available to other persons in like circumstances is truly American and constitutes equal protection of the laws. 16 Am. Jur. 2d, Constitutional Law, §§ 485–493.

"The guarantee of equal protection is 'aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the op-

pression of inequality, on the other.' *Truax* v. *Corrigan*, 257 U.S. 312, 332 . . . ; 16 Am. Jur. 2d, Constitutional Law, § 335 p. 643, § 485 p. 846. Equal protection of the laws forbids all invidious discrimination but does not demand identical treatment for all persons without consideration of differences in relevant circumstances. *Norvell* v. *Illinois*, 373 U.S. 420 . . . ; *Rinaldi* v. *Yeager*, 348 U.S. 305 . . . . The provisions of the federal and state constitutions have the same meaning and impose similar constitutional limitations. *Cyphers* v. *Allyn*, 142 Conn. 699, 703 . . . ." *Karp* v. *Zoning Board*, 156 Conn. 287, 294. Equal protection provisions of the federal and state constitutions are of the same meaning and create similar limitations. *Proctor* v. *Sachner*, 143 Conn. 9, 17. When a statutory provision affects without difference all persons similarly situated, it cannot be said to deprive anyone of equal protection of the laws. *State* v. *Mead*, 130 Conn. 106, 109.

Germane to the position here taken by the defense is its statement that even though the penalties prescribed for violation of General Statutes § 19-480 (a) definitely make any violation thereunder, including the sale of cocaine, a felony, it is elsewhere provided, under §§ 19-215 (a), 19-213 (1), 19-226 (k) and 19-226 (d), that the sale of cocaine is a misdemeanor.

There might have been force to the position taken by the defendant if the subject matter as declared in the statutes cited above, other than § 19-480 (a), was identical with § 19-480 (a). This is not so. Section 19-480 (a) relates to any person who manufactures, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, offers, gives or administers to another person any narcotic drug or cannabis-type drug, except as authorized so to do in chapter 359 of the General Statutes, entitled

"Dependency-Producing Drugs." Section 19-480 (a) prohibits all sales except those so authorized. On the other hand, § 19-215 (a) and the other sections, apart from § 19-480 (a), referred to in the argument by the defense on the ground that violations of them are punishable as misdemeanors, are contained in chapter 342, entitled "Uniform Food, Drug and Cosmetic Act," and are concerned with an assortment of violations, none of which absolutely prohibits any sales. Briefly, § 19-213 deals, in the main, with adulteration and misbranding by those who, under the law, may sell food, drugs, devices or cosmetics; § 19-215 is the penalty section of the Uniform Food, Drug and Cosmetic Act; and §§ 19-226 (k) (1) and (d) deal with the misbranding of drugs and other items by those who are authorized to sell them.

On the basis alone that there have been provided two degrees of punishment, one for felonies and the other for misdemeanors, neither inequality nor impropriety can be claimed to follow. There are involved two entirely different crimes. One forbids the right of manufacture or sale of narcotics by those not specifically authorized to manufacture or sell them. The other forbids their sale or receipt except as directed with regard to purity, labeling, branding, packaging, the keeping of records and similar provisions of sale or receipt, and these statutes apply only when the seller has proper authority to deal with dependency-producing drugs. It is not required that violations of such distinct and different crimes be punished in the same way. The opposite is pertinent.

Clearly, a basic issue in this proceeding is whether the Uniform Food, Drug and Cosmetic Act, chapter 342, regulates by its provisions the same acts of conduct as the provisions of the Dependency-Producing Drugs Act, chapter 359.

Section 19-211 of chapter 342 is headed, "Short title and legislative intent," and declares: "This chapter may be cited as the 'Connecticut Food, Drug and Cosmetic Act,' and is intended to enact state legislation: (a) Which will safeguard the public health and promote the public welfare by protecting the consuming public from injury by product use and the purchasing public from injury by merchandising deceit, arising from intrastate commerce in food, drugs, devices and cosmetics; (b) which shall be uniform, as provided in this chapter, with the federal food, drug and cosmetic act and with the federal trade commission act, to the extent to which it outlaws the false advertisement of food, drugs, devices and cosmetics; and (c) which will promote uniformity of such legislation and its administration and enforcement in and throughout the United States."

Although no such explicit reasons for being are set out as a preface to chapter 359, entitled "Dependency-Producing Drugs," a complete reading of that chapter clearly communicates the legislative intent involved therein. The control and abuse of dependency-producing drugs, the trafficking in them, and the suppression of the drug habit are of cardinal concern in this chapter, which prohibits, with specific exceptions reflecting service and professional considerations, the possession, sale, distribution and dispensing of controlled drugs. It is definite that selling or supplying cocaine, a narcotic, is penalized by § 19-480 (a) when it is sold or supplied by anyone other than one duly licensed so to do by the commissioner of health. This act of prohibition does not deal primarily with regulations as to labeling, absence of adulteration, packaging or the merchandising of drugs; such regulations are included, inter alia, in the provisions of the other statutes here dis-

cussed, violations of which are declared by our legislature to be but misdemeanors.

When there exists a difference in any of the elements constituting separate crimes, however similar these violations may be, or if proof of a different kind is required for each, they are not to be considered identical. Depending on the available evidence, the state's attorney has the right to make a decision as to which charge he will lodge. *United States* v. *Garnes,* 258 F.2d 530, 533; *State* v. *Reed,* 34 N.J. 554, 571; see *State* v. *Zornes,* 78 Wash. 2d 9, 28 (concurring opinion).

"The requirement of equal protection of the laws does not deny a state the right to make classifications in law when such classifications are rooted in reason. . . . 'It is our law that where there is some natural and substantial difference germane to the subject and purposes of the legislation, there is no illegal discrimination between those within an established class and others not so included.' *Franklin Furniture Co.* v. *Bridgeport,* 142 Conn. 510, 514 . . . ." *State* v. *Delgado,* 161 Conn. 536, 549.

It is found that all of the arguments set forth by the defendant in support of his motion rest upon his claim of unconstitutionality as advanced and here discussed. Further, it may be observed not only that any reasonable doubts, if they exist, must be resolved in favor of the legislative enactments but also that it is the duty of the court here, in effect, to sustain the validity of these statutes if any reasonable distinction can be found to justify their mutually exclusive existence. It is as much the duty of this court not to be concerned with the wisdom of the action of the legislative department as it is to sustain its enactments unless invalidity thereof, under the constitution, is clear beyond a reasonable

doubt. *State* v. *Shuster,* 145 Conn. 554, 558; *State* v. *Gordon,* 143 Conn. 698, 703; *Silver* v. *Silver,* 108 Conn. 371, 377.

It is further observed that when legislative action is challenged on the basis of failure to conform to a constitutional directive, a court may only decide whether there is irreconcilability. The court is "to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends." *United States* v. *Butler,* 297 U.S. 1, 63.

This court cannot agree with the contention of the defense that the legislation here proceeded upon is faulty. There is a distinct difference in the crimes claimed by the defense to be similar. The difference in pertinent penalties has a basis in justice, as does the choice of accusation by the state.

The motion to dismiss is denied.